UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN KOMOREK and API INTERNATIONAL CONSULTING GROUP, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> CONFLICT INTERNATIONAL INC., MICHAEL LaCORTE, and ANDREW McLAREN, <br><br> Defendants. | **AMENDED COMPLAINT** <br><br> Docket No.: 22-cv-09467-ER <br><br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This case is about a powerful private investigations agency who wanted to penalize and make an example of a former employee who had the temerity to question its business practices. After raising concerns about the company's accounting patterns and business practices and then resigning after the company tried to silence him, the employee, Stephen Komorek, had his life turned upside down by an employer, and its leader, determined to prove that it is too powerful to be crossed.  In the aftermath of Mr. Komorek's resignation, the company and its agents engaged in a widespread smear campaign that included repeated bouts of defamation to Mr. Komorek's new business partner and one of his clients; an illegal attempt to obtain his private medical records from his time serving in the United States military; and an administrative claim brought against Mr. Komorek for the very purpose of harming his reputation and business prospects.

2.     Through this action, Mr. Komorek and his new company seek damages in connection with the illegal crusade that his former company and its agents have instituted against him since his departure.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the claims in this action reflect a matter in controversy that exceeds $75,000, and the plaintiffs are in complete diversity from the defendants.

4.  In particular, while Stephen Komorek is a resident and citizen of the State of Ohio and API International Consulting Group, Inc. ("API") is a citizen of the State of Ohio, Conflict International Inc. ("Conflict International") is a citizen of the State of New York, Michael LaCorte ("Mr. LaCorte") is a resident and citizen of the United Kingdom, and Andrew McLaren ("Mr. McLaren") is a citizen of the State of Tennessee.

5.  Venue is proper in the Southern District of New York under, *inter alia*, 28 U.S.C. § 1391(b)(3), as Conflict International is subject to the Court's personal jurisdiction as New York County is its place of incorporation and New York State is its principal place of business.

6.  A jury trial is hereby demanded.

## PARTIES

7.  Plaintiff Stephen Komorek is a resident of the State of Ohio, was for a relevant time an employee with Conflict International Inc., which is headquartered in New York, and is now one of the owners of API International Consulting Group, Inc.

8.  Plaintiff API International Consulting Group, Inc., is a domestic corporation with offices in Ohio, North Carolina, Colorado and New York.

9.  Defendant Conflict International Inc. is a domestic corporation headquartered in the State of New York.  During a relevant time period it employed Plaintiff Stephen Komorek.

10.  Defendant Michael LaCorte is the president of Conflict International Inc., and, on information and belief, is a citizen and resident of the United Kingdom.  He is systemically doing business in the State of New York, he personally and regularly travels to New York for such

business purposes, and on information and belief, he also owns real property in the State of New York.

11.     Defendant Andrew McLaren is on information and belief a resident of the State of Tennessee and, except as otherwise provided, was at all relevant times acting with the assent, for the benefit, and under the control of Conflict International.

## BACKGROUND

12.     Stephen Komorek ("Mr. Komorek") is a veteran of the United States military who developed a promising career as a private investigator.

13.     Mr. Komorek began working for Conflict International on or about October 9, 2018, and became a formal Conflict International employee in or about April 2019.

14.     When Mr. Komorek joined Conflict International, it was a small company that required Mr. Komorek to handle many different job responsibilities at once.  This included not just his duties as a private investigator, but it also required him to handle certain accounting and administrative responsibilities.

15.     Pursuant to such responsibilities, Mr. Komorek began to sense that Conflict International's accounting of their work was being performed contrary to law and regulations. In particular, Mr. Komorek came to learn that Conflict International's associated entity in the United Kingdom, also run by Mr. LaCorte, systemically overbilled clients either by charging for work not performed or by inflating the number of hours necessary to complete a given task.  As Mr. LaCorte began to pressure Mr. Komorek to institute the same fraudulent practices in New York—at Conflict International—Mr. Komorek refused.

16.     In the scope of his duties, Mr. Komorek also came to learn that Conflict International was soliciting and doing business in states in which its private investigators were not

licensed but were required to be.  This included private investigation business-solicitation in the State of Florida, California, Illinois, and others, without appropriate licensure, and without being registered as a foreign corporation in any such states.  He brought such concerns to Mr. LaCorte and again was told that the company's business practices were not going to change.

17.     In December 2021, while at a Christmas party with Conflict International employees, Mr. LaCorte stood up in front of Mr. Komorek and many of his colleagues to yell at and publicly humiliate him.

18.     The following day, Mr. LaCorte called Mr. Komorek into his office.  At that time, Mr. Komorek informed Mr. LaCorte that he could not tolerate such disrespectful conduct from an employer and that if it continued he would be forced to quit.

19.     On February 24, 2022, Andrew McLaren ("Mr. McLaren"), acting as an agent of Conflict International, contacted a high-net-worth client of Mr. Komorek , Trudy Jacobson (the "Client"), and on information and belief falsely told her that Mr. Komorek was a thief and an embezzler, and told her to stick with Conflict International but to fire Mr. Komorek from servicing her account.

20.     This contact was particularly damaging, because Mr. McLaren had known the Client since approximately 2021, at which time Mr. McLaren was performing employment services for the Client in and around New York; it was pursuant to these services in New York that Mr. McLaren had eventually turned the Client on to working with Conflict International and Mr. Komorek.

21.     Upon learning of the February 2022 Defamation, on February 24, 2022, Mr. Komorek reported it to Mr. LaCorte.  On information and belief, Mr. LaCorte took no steps to discipline the liaison or otherwise resolve the problem.

22.     On February 25, 2022, during a weekly video staff meeting (the "February 25 Video Conference"), a non-executive director for Conflict International raised concerns about the company's accounting practices.

23.     On the February 25 Video Conference, an additional employee of Conflict International echoed concerns about the company's accounting practices.

24.     On the February 25 Video Conference, Mr. LaCorte grew enraged, refused to make any accounting changes, and publicly blamed and attempted to shame Mr. Komorek for elevating the accounting concerns.

25.     On February 25, 2022, Mr. Komorek resigned from Conflict International.

26.     With a colleague, Mr. Komorek built his own company called API International Consulting Group, Inc. ("API"), which is engaged in private investigations work.

27.     In a short period of time, Mr. Komorek helped build API into a successful venture.

28.     Conflict International and the individually named defendants responded to Mr. Komorek's resignation with a pattern of retaliatory behavior designed to harm his reputation and injure his new company.

29.     In particular, the Client was loyal to Mr. Komorek and became a client of API.

30.     On April 1, 2022 at 3:52am, Mr. McLaren contacted the Client through e-mail accusing Mr. Komorek of being delinquent on a fabricated debt and of lying to the Client about it (the "April Defamation").  In full, he stated:

> You have been told third party misinformation.
> The truth of the matter is I politely asked Stephen Komorek to pay me the money he owes me from [a] 10% commission and he refused.  I then decided to end my business relationship and friendship with him since he did not keep his word.

> I have no interest in any drama and zero energy for negativity.
> Integrity and loyalty is everything to me.  Victoria is a honest and trustworthy human being who is altruistic, charismatic and compassionate.  I'm blessed to have her and her husband Nik in my life for over a decade.  They are amazing parents and salt of the Earth people.
> Sometimes it takes years and some soul searching to realize who is lying and who is telling the truth.
> I wish you success and happiness and I have faith you will eventually figure out who is lying and who is telling the truth.
> 'It's easier to fool people than to convince the, that they have been fooled'-Mark Twain

31.     Later in the month, an investigative team working on behalf of Conflict International submitted a request to obtain, among other things, confidential medical records from Mr. Komorek's time serving in the United States Armed Forces (the "Illegal Medical Records Request").

32.     On information and belief, the Illegal Medical Records Request yielded Mr. Komorek's medical records for Conflict International's perusal.

33.     On information and belief, the Illegal Medical Records Request was submitted by J.W.B. and M.T. acting as servant for Conflict International.

34.     On May 8, 2022, at approximately 9:43am, Mr. McLaren contacted an executive at a leading law enforcement newspaper *Law Enforcement Today*, Kyle Reyes, and sent him a report, whose contents he adopted as true, accusing Mr. Komorek of fabricating his resume and being a con (the "May Defamation").  The report is attached in full at Exhibit A.  Mr. McLaren used this report as part of an allegation that a related article he thought had been ghostwritten by Mr. Komorek was "complete B.S."

35.     Leading into the summer of 2022, API was in mature conversations to join, merge with, or be acquired by a third-party entity (the "Proposed Merger Event").

36.     Leading into the summer of 2022, Mr. LaCorte became aware of the Proposed Merger Event.

37.     On or about June 23, 2022, Mr. LaCorte filed a frivolous and retaliatory administrative complaint against Mr. Komorek with the World Association of Detectives (the "WAD"), a powerful trade association in the private investigations industry, headquartered in Colorado, with whom Mr. Komorek had been affiliated (the "Retaliatory Complaint").

38.     Included within the Retaliatory Complaint was, *inter alia*, a false and scandalous allegation that Mr. Komorek had jeopardized the safety of his colleagues during the course of an investigation—a claim that remained pending for nearly two months until it was rejected and dismissed.

39.     Included in the Retaliatory Complaint was, *inter alia*, an additionally false and scandalous allegation that Mr. Komorek demonstrated conduct "Unbefitting of a Member of the Association" due to steps he had taken as manager of his office—a claim that again remained pending for nearly two months until it was rejected and dismissed.

40.     Included in the Retaliatory Complaint was, *inter alia*, an additionally false and scandalous allegation that Mr. Komorek violated his fiduciary duties as manager of Conflict International—a claim that remained pending for nearly two months until it was rejected and dismissed.

41.     Included in the Retaliatory Complaint was, *inter alia*, an additionally false and scandalous allegation that Mr. Komorek violated ethical rules by allegedly founding API two days before his employment with Conflict International terminated—a claim that remained pending for nearly two months until it was rejected and dismissed.

42.     Included in the Retaliatory Complaint was, *inter alia*, an additionally false and scandalous allegation that Mr. Komorek had violated ethical rules by damaging company property by drawing on a wall—a claim that remained pending for nearly two months until it was rejected and dismissed.

43.     On August 3, 2022, at 2:08am, Mr. McLaren contacted Mr. Komorek's business partner, Patrick Welsh (the "Partner"), on LinkedIn in an attempt to damage the business by undermining trust between the partners (the "August Defamation 1").  He wrote:

> SK is a pathological
> Liar
> I have his military records he is a complete fraud
> I tried to take high road but his non stop harassment and slander needs to be addressed

44.     Moments later, Mr. McLaren sent the Partner Exhibit A containing further false and defamatory claims against Mr. Komorek ("August Defamation 2").

45.     The same morning, Mr. McLaren made additional false and defamatory statements about Mr. Komorek being a conman and fraud ("August Defamation 3").  He wrote to the Partner on LinkedIn:

> Discharged from the National Guard as medically unfit for service, but that also covers behavioral discharges.   it is reported he was found to be a habitual liar.
> No personally earned awards.
> Education all correspondence courses.
> Not a military intelligence soldier as claimed
> Not special forces as claimed
> Not assigned to special operations as claimed
> No college
> No security clearance, records show he was denied a clearance.

46.     Mr. Komorek and API bring the present action to obtain compensatory and punitive damages.

## CAUSES OF ACTION

### FIRST:  VIOLATION OF NEW YORK LABOR LAW §740

47.     Plaintiffs repeat all prior allegations as if set forth more fully herein.

48.     While an employee at Conflict International, Mr. Komorek disclosed to his supervisor, Mr. LaCorte, his reasonable belief that Conflict International was engaging in accounting practices contrary to law and regulations ("Good Faith Disclosure 1").

49.     While an employee at Conflict International, Mr. Komorek disclosed to his supervisor, Mr. LaCorte, his reasonable belief that Conflict International was engaging in business practices contrary to licensing rules and regulations ("Good Faith Disclosure 2").

50.     Mr. LaCorte and Conflict International took retaliatory action against Mr. Komorek because of Good Faith Disclosure 1.

51.     Mr. LaCorte and Conflict International took retaliatory action against Mr. Komorek because of Good Faith Disclosure 2.

52.     Mr. LaCorte and Conflict International penalized and discriminated against Mr. Komorek because of Good Faith Disclosure 1.

53.     Mr. LaCorte and Conflict International penalized and discriminated against Mr. Komorek because of Good Faith Disclosure 2.

54.     Mr. LaCorte and Conflict International took steps to adversely impact Mr. Komorek's future employment prospects, and to undermine his credibility in the event he accused Conflict International of accounting malfeasance, including but not limited to orchestrating a campaign of defamation through the April Defamation, the May Defamation, and the August Defamations; illegally obtaining his military medical records through the Illegal Medical Records Request; spreading rumors and false innuendos about Mr. Komorek's military training and

accusing him of being a con; and bringing frivolous administrative claims against him through the Retaliatory Complaint.

55.     As a consequence of the retaliatory action, Mr. Komorek has sustained pecuniary damages to his post-Conflict International employment and has sustained attorneys' fees, costs and disbursements; and he is entitled to an additional civil penalty.

56.     Because the violation of Labor Law §740 was willful, Mr. Komorek is entitled to punitive damages.

## SECOND:  LIBEL AS AGAINST DEFENDANT MCLAREN AND CONFLICT INTERNATIONAL (THE APRIL DEFAMATION) (Ohio Law)

57.     Plaintiffs repeat all prior allegations as if set forth more fully herein.

58.     Mr. McLaren published the April Defamation to a third-party—namely, the Client.

59.     Mr. McLaren lacked permission or privilege to publish the April Defamation.

60.     The April Defamation was in writing.

61.     The April Defamation was knowingly false, as Mr. Komorek was not delinquent on any debt, never owed Mr. McLaren money, and is not a liar.

62.     The April Defamation was libelous per se, as it tended—and was uttered for the very purpose to—injure Mr. Komorek in his trade or occupation.

63.     At all relevant times Mr. McLaren was acting with the assent, for the benefit and under the control of Conflict International.

64.     Conflict international is vicariously liable for Mr. McLaren's libelous activity.

## THIRD:  LIBEL AS AGAINST DEFENDANT MCLAREN AND CONFLICT INTERNATIONAL (THE MAY DEFAMATION) (Ohio Law)

65.     Plaintiffs repeat all prior allegations as if set forth more fully herein.

66.     Mr. McLaren published the May Defamation to a third-party—namely, Kyle Reyes.

67.     Mr. McLaren lacked permission or privilege to publish the May Defamation.

68.     The May Defamation was in writing.

69.     The May Defamation was knowingly false, as Mr. Komorek did not mispresent his resume or experience and did not impersonate a former military intelligence specialist.

70.     The May Defamation was libelous per se, as it tended to—and was uttered for the very purpose to—injure Mr. Komorek in his trade or occupation.

71.     At all relevant times Mr. McLaren was acting with the assent, for the benefit and under the control of Conflict International.

72.     Conflict international is vicariously liable for Mr. McLaren's libelous activity.

**FOURTH:  LIBEL AS AGAINST DEFENDANT MCLAREN AND CONFLICT INTERNATIONAL (AUGUST DEFAMATION 1) (Ohio Law)**

73.     Plaintiffs repeat all prior allegations as if set forth more fully herein.

74.     Mr. McLaren published the August Defamation 1 to a third-party—namely, Patrick Welsh.

75.     Mr. McLaren lacked permission or privilege to publish the August Defamation 1.

76.     The August Defamation 1 was in writing.

77.     The August Defamation 1 was knowingly false, as Mr. Komorek is not a pathological liar or a fraud.  The gist of August Defamation 1 is that Mr. Komorek is a liar and fraud because he fabricated his background for the purpose of gaining business as a private investigator, but Mr. Komorek's representations about his background are utterly true.

78.     The August Defamation 1 was libelous per se, as it tended to—and was uttered for the very purpose to—injure Mr. Komorek in his trade or occupation.

79.     At all relevant times Mr. McLaren was acting with the assent, for the benefit and under the control of Conflict International.

80.     Conflict international is vicariously liable for Mr. McLaren's libelous activity.

### FIFTH:  LIBEL AS AGAINST DEFENDANT MCLAREN AND CONFLICT INTERNATIONAL (AUGUST DEFAMATION 2) (Ohio Law)

81.     Plaintiffs repeat all prior allegations as if set forth more fully herein.

82.     Mr. McLaren published the August Defamation 2 to a third-party—namely, Patrick Welsh.

83.     Mr. McLaren lacked permission or privilege to publish the August Defamation 1.

84.     The August Defamation 2 was in writing.

85.     The August Defamation 2 was knowingly false, as Mr. Komorek did not mispresent his resume or experience and did not impersonate a former military intelligence specialist.

86.     The August Defamation 2 was libelous per se, as it tended to—and was uttered for the very purpose to—injure Mr. Komorek in his trade or occupation.

87.     At all relevant times Mr. McLaren was acting with the assent, for the benefit and under the control of Conflict International.

88.     Conflict international is vicariously liable for Mr. McLaren's libelous activity.

### SIXTH:  LIBEL AS AGAINST DEFENDANT MCLAREN AND CONFLICT INTERNATIONAL (AUGUST DEFMATION 3) (Ohio Law)

89.     Plaintiffs repeat all prior allegations as if set forth more fully herein.

90.     Mr. McLaren published the August Defamation 3 to a third-party—namely, Patrick Welsh.

91.     Mr. McLaren lacked permission or privilege to publish the August Defamation 3.

92.     The August Defamation 3 was in writing.

93.     The August Defamation 3 was knowingly false, as Mr. Komorek was not discharged from the National Guard for behavioral reasons; he was not found to be a habitual liar; he had personally earned awards; he had received education beyond correspondence courses; and he never claimed to be a military intelligence soldier, a member of the Special Forces, or to have graduated college; though he does have extensive experience in military intelligence, in working with Special Forces and with Special Operations.  He was also never denied security clearance.

94.     The August Defamation 3 was libelous per se, as it tended to—and was uttered for the very purpose to—injure Mr. Komorek in his trade or occupation.

95.     At all relevant times Mr. McLaren was acting with the assent, for the benefit and under the control of Conflict International.

96.     Conflict international is vicariously liable for Mr. McLaren's libelous activity.

### SEVENTH:  TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AS AGAINST DEFENDANT LACORT AND CONFLICT INTERNATIONAL (Colorado Law)

97.     Plaintiffs repeat all prior allegations as if set forth more fully herein.

98.     Mr. LaCorte was aware of the Proposed Merger event.

99.     Mr. LaCorte filed the Retaliatory Complaint for the purpose of interfering with API and Mr. Komorek's prospective business relationships, including the Proposed Merger Event.

100.     Mr. LaCorte's interference with the Proposed Merger Event, which was with Global Pursuit Investigations ("GPI") out of Huntington Beach, California, was both intentional and done through improper means.

101.     As Mr. LaCorte knew, as a high-level member of WAD himself, the owner of GPI, Logan Clarke, was also a longstanding member of WAD, and thus the Retaliatory Complaint through the WAD was directed in a fashion to notify Mr. Clarke of the allegations.

102.    As a consequence of the Retaliatory Complaint, on August 2, 2022 the Proposed Merger Event fell apart—with GPI citing "the commotion i'm hearing from several people in WAD."

103.    As a consequence of the Proposed Merger Event falling apart, API and Mr. Komorek suffered damages in excess of $200,000.

104.    At all relevant times Mr. LaCorte was acting with the assent, for the benefit and under the control of Conflict International.

105.    Conflict International is vicariously liable for Mr. LaCorte's tortious behavior.

**WHEREFORE**, Plaintiffs pray for relief as follows:

A.   That the Court award compensatory damages to Plaintiffs and against the defendants jointly and severally, in an amount to be determined at trial;

B.   That the Court award punitive damages to Plaintiffs, and against all defendants, in an amount to be determined at trial that will deter such conduct by defendants in the future;

C.   That the Court award attorney's fees, costs and disbursements;

D.   For a trial by jury;

E.   For a pre-judgment and post-judgment interest and recovery of their costs; and

F.   For any and all other relief to which they may be entitled.

Dated: Garden City, New York
      February 28, 2023

**BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP**


By:      /s/
      Kevin Kearon, Esq.
      Alexander Klein, Esq.